UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHARLES WILLIAMS, M.D., | |
| Plaintiff, | 2:09-CV-00554-PMP-PAL |
| v. | |
| | O R D E R |
| UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA; JOHN ELLERTON, M.D.; BOARD OF TRUSTEES OF UMC; RORY REID; STEVE SISOLAK; TOM COLLINS; LARRY BROWN; LAWRENCE WEEKLY; CHRIS GIUNCHIGLIANI; SUSAN BRAGER; and MEDICAL AND DENTAL STAFF OF THE UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, | |
| Defendants. | |

Presently before the Court is Defendants' Motion for Summary Judgment on Claims One, Ten, Eleven, Twelve, and Thirteen (Doc. #96), filed on March 11, 2010. Plaintiff filed an Opposition (Doc. #103) on April 5, 2010. Defendants filed a Reply (Doc. #109) on April 22, 2010.

Also before the Court is Plaintiff's Motion for Reconsideration of Order Striking Certain Claims Against Certain Defendants (Doc. #102), filed on April 2, 2010. Defendants filed a Response (Doc. #122) on July 26, 2010.

///

Also before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. #105), filed on April 8, 2010. Defendants filed a Response (Doc. #112) on April 26, 2010. Plaintiff filed a Reply (Doc. #113) on May 6, 2010.

The Court held a hearing on these motions on July 26, 2010. (Mins. of Proceedings (Doc. #123).) The Court previously has set forth the factual predicate for this case in prior Orders, and the Court will not repeat those facts here except where necessary to resolve the pending motions.

**I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CLAIMS ONE, TEN, ELEVEN, TWELVE, AND THIRTEEN (Doc. #96)**

Defendants move for summary judgment on Plaintiff Charles Williams' ("Williams") claims in counts 1 (due process), 10 (negligence), 11 (defamation), 12 (defamation per se), and 13 (libel) as barred by the statute of limitations. Defendants contend each of Williams' remaining claims is governed by the two-year limitations period in Nevada Revised Statutes § 11.190, including his federal claim under 42 U.S.C. § 1983, which borrows the state limitations period for personal injuries.

Williams responds that his constitutional claim has not accrued for limitations purposes because it is a continuing tort. Williams contends that because he was suspended and lost his privileges in violation of his due process rights, and that has not been corrected, and the National Practitioner Data Bank ("NPDB") report remains available and is accessed on a regular basis by hospitals and insurance companies, the due process violation is continuing and has not accrued for limitations purposes. Williams also argues Defendants waived the limitations defense by delaying his fair hearing date and then delaying in filing the administrative record with the state court. Williams also argues he is entitled to equitable tolling. As to his defamation claim, Williams argues each time someone accesses the NPDB it counts as a new publication, and his report has been accessed within the limitations period.

A two-year limitations period applies to each of Williams' claims in counts 1 (due process), 10 (negligence), 11 (defamation), 12 (defamation per se), and 13 (libel). See Nev. Rev. Stat. § 11.190(4)(e); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 974 (9th Cir. 2004) (adopting state personal injury limitations period for § 1983 claims). Defendant University Medical Center's ("UMC") Board of Trustees ("Board") denied Williams' final appeal on February 21, 2006. Williams filed his Complaint in this action on March 23, 2009. Consequently, Williams filed his Complaint well beyond the two year limitations period for any of Defendants' conduct. His claims therefore are barred absent some accrual, waiver, tolling, or other rule to extend the limitations period.

**A. Continuing Tort**

When a tort involves continuing wrongful conduct, the statute of limitations does not begin to run until the conduct ends. Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002). A continuing tort exists when no single incident fairly or realistically can be identified as the cause of significant harm to the plaintiff. Id. "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981).

Plaintiff's remaining claims are not continuing torts. Each violation is discrete. For example, the failure to give adequate notice in the initial summary suspension was complete at the time it was done. Likewise, the failure to turn over documents to permit Williams to prepare adequately for his fair hearing, while perhaps continuous for a while, ended at the fair hearing because he was damaged at that point by his alleged inability to prepare for the hearing without the documents. Even if Defendants' course of conduct throughout the disciplinary proceedings up to and including the Board's decision could be considered continuing conduct, the Board issued its decision on February 21, 2006. Plaintiff filed his Complaint in this case more than two years after that date. At bottom, Williams is complaining about the continuing effects of Defendants' acts, i.e., his inability

to obtain employment in the medical field due to the continued existence of the NPDB report, not continuing acts by Defendants. Defendants have not done anything, other than defend litigation, since February 2006. Williams' claims are not continuing torts.

**B.  Waiver**

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001). Williams has not shown that Defendants waived the statute of limitations defense by delaying his fair hearing date or by delaying the filing of the administrative record with the state court. Even assuming Defendants engaged in this conduct, Williams does not explain how either act constitutes a waiver of a statute of limitations defense in relation to the claims Williams now pursues in this action.

However, the Court concludes Defendants have waived the statute of limitations defense for Williams' § 1983 claim. When a party moves for final summary judgment on an issue, the nonmoving party must raise in their opposition all arguments or defenses which would preclude judgment in the moving party's favor or else the nonmoving party abandons the argument or defense. Case v. Eslinger, 555 F.3d 1317, 1329 (11th Cir. 2009); Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1264 (11th Cir. 2001); Diversey Lever, Inc. v. Ecolab, Inc., 191 F.3d 1350, 1352 (Fed. Cir. 1999); United Mine Workers of Am. 1974 Pension v. Pittston Co., 984 F.2d 469, 478 (D.C. 1993). But see Long v. Howard Univ., 550 F.3d 21, 24-25 (D.C. Cir. 2008) (holding statute of limitations defense "can be raised at trial so long as it was properly asserted in the answer and not thereafter affirmatively waived," and distinguishing United Mine Workers by asserting the defendant in that case waived its defense from the beginning by failing to assert the defense in a pleading or motion). As the Eleventh Circuit stated, a party "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions." Case, 555

4

F.3d at 1329.

Williams previously moved for summary judgment on his § 1983 claim. Defendants did not raise the statute of limitations as a possible defense in their opposition to that motion. The Court granted partial summary judgment to Williams on this claim. Now, after having received an unfavorable result, Defendants want to raise the statute of limitations defense to bar the claim. Defendants should have raised their affirmative defense in response to the motion for summary judgment, but did not. The Court could have granted complete summary judgment to Williams on the § 1983 claim on the prior round of briefing. Had Defendants then moved for reconsideration on the basis of the statute of limitations, the Court would have denied such a motion because Defendants could, and should, have raised the limitations argument in response to Williams' motion. Defendants therefore waived their statute of limitations defense on Williams' § 1983 claim.

**C. Equitable Tolling**

Nevada's rules on equitable tolling apply to Williams' state law claims and his § 1983 claim. See Lucchesi v. Bar-O Boys Ranch, 353 F.3d 691, 694 (9th Cir. 2003) ("State law governs the statutes of limitations for section 1983 actions as well as questions regarding the tolling of such limitations periods."). The Nevada Supreme Court has stated that "the purpose of statutory time limitations for judicial review is to prevent stale issues from being raised against a party." Seino v. Employers Ins. Co. of Nev., 111 P.3d 1107, 1112 (Nev. 2005). Nevada permits the use of equitable tolling "in situations where the danger of prejudice to the defendant is absent, and the interests of justice so require." Id. (alteration and quotation omitted). Nevada considers the following factors to determine whether equitable tolling is appropriate: the plaintiff's diligence; the plaintiff's knowledge of the relevant facts; the plaintiff's reliance on authoritative statements that misled the plaintiff about the nature of his rights; any deception or false assurances by the defendant; the prejudice to the defendant that actually would result; and "any other equitable

considerations appropriate in the particular case." Id.  Nevada has tolled limitations periods where the plaintiff was pursuing the same issues in another court or administrative proceedings, but only where the party was required to proceed in the other forum, and the law favored resolution in that forum.  Siragusa v. Brown, 971 P.2d 801, 808 n.7 (Nev. 1998).

Williams has not been diligent about pursuing his claims asserted in the present litigation, which he filed two years beyond the limitations period.  Williams does not identify anything that would have precluded his bringing suit in this Court while simultaneously pursuing his appeal of the Board's decision in state court.  Williams' knowledge of the facts also weighs against equitable tolling.  Williams has known about Defendants' conduct, both as to discrete acts and the overall course of conduct, since no later than the Board's decision in February 2006.  Williams has not claimed he relied on any authoritative statements that misled him about the nature of his rights.  He also has not identified any deception or false assurances by Defendants, beyond their failure to turn over certain documents.  However, Williams was aware of Defendants' refusal to turn over documents a long time ago and that in no way misled him as to the running of the limitations period.  Defendants do not identify any prejudice that would result from tolling other than they have a right to closure.  However, that prejudice is not insignificant.

Viewing all the equitable tolling factors, the Court concludes that equitable tolling is not appropriate.  Williams knew all relevant facts well before the statute of limitations expired, yet did not file suit until two years after the limitations period ran, and he has identified no equitable considerations that would serve to extend the limitations period under the applicable test in Nevada.

**D. Multiple Publications of the NPDB Report**

Nevada has not addressed whether it would apply the "single publication rule." That rule provides that any one edition of a magazine or newspaper is a single publication

and gives rise to only one cause of action for defamation, with a "statute of limitations period that runs from the point at which the original dissemination occurred." Canatella v. Van De Kamp, 486 F.3d 1128, 1133 (9th Cir. 2007); Oja v. U.S. Army Corps of Eng'rs, 440 F.3d 1122, 1130 (9th Cir. 2006). "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." Id. (quotation omitted).

The Court concludes Nevada likely would follow other jurisdictions in adopting the single publication rule, given its logic that a single publication of a magazine or newspaper gives rise to one cause of action, rather than a cause of action for every individual magazine or newspaper distributed. The rule "is designed to protect defendants from harassment through multiple suits and to reduce the drain of libel cases on judicial resources." Oja, 440 F.3d at 1131. Additionally, Nevada likely would follow the Restatement (Second) of Torts § 577A, which sets forth the single publication rule. However, it adds the caveat that the rule:

> does not include separate aggregate publications on different occasions. Thus if the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action. The same is true of a rebroadcast of the defamation over radio or television or a second run of a motion picture on the same evening. In these cases the publication reaches a new group and the repetition justifies a new cause of action. The justification for this conclusion usually offered is that in these cases the second publication is intended to and does reach a new group.

Restatement (Second) Torts § 577A cmt. d.

The United States Court of Appeals for the Ninth Circuit has concluded that the single publication rule should apply to internet postings as the functional equivalent of

7

traditional print media.  Although noting some differences, including the ability of the internet poster to take down the offending web posting in a way not possible in traditional print media, the Ninth Circuit concluded that–

> Internet publication is a form of "aggregate communication" in that it is intended for a broad, public audience, similar to print media.  In both print and Internet publishing, information is generally considered "published" when it is made available to the public.  Once information has been published on a website or print media, there is no further act required by the publisher to make the information available to the public.

Oja, 440 F.3d at 1130-31.  The Ninth Circuit concluded the single publication rule made sense for internet postings because, due to the sheer number of internet users and the ability to post something for public consumption for an indefinite period of time, "allowing Internet publications to be subject to a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants," and would inhibit the free and open dissemination of information on the internet.  Id.

In Oja, the plaintiff argued that an agency's website posting that divulged personal information about him in violation of the Privacy Act which generally was accessible to anyone is similar to members of the public serially calling the defendant and being told the defamatory information, and thus should not be subject to the single publication rule.  The Ninth Circuit rejected the plaintiff's argument, concluding that the "actual posting or publishing of information onto a website requires only a single, discrete act, and no additional action by the host is necessary before the information may be accessed by the general public.  Thus, unlike a series of telephone calls, once a host posts information on the Internet, the host may remain passive and does not have to respond anew each time an Internet user accesses its website." Id. at 1132.

The Oja Court also distinguished a case upon which Williams relies, Swafford v. Memphis Individual Practice Association, No. 02A01-9612-CV-00311, 1998 WL 281935

8

1  (Tenn. Ct. App. 1998) (unpublished).  Swafford involved an NPDB report which provided

2  allegedly defamatory information to health care entities requesting the information from the

3  data bank.  The Swafford court concluded the single publication rule did not apply "because

4  each time a certified entity directly requested the information from the electronic data-bank

5  held by the NPDB, the NPDB itself provided the information directly to the requesting

6  entity."  Id. (citing Swafford, 1998 WL 281935 at *8).  Swafford compared the NPDB to

7  credit report cases where someone makes a false report to a credit reporting agency, which

8  then publishes that information when it receives a specific request.  As set forth in

9  Swafford, courts have not applied the single publication rule in such cases, finding that each

10 discrete request is a new publication to a new audience.  Swafford, 1998 WL 281935 at

11 *6-8.  The Oja Court distinguished Swafford as follows:

> Swafford is distinguishable from our present concern, and is not inconsistent with application of the single publication rule to the vast majority of Internet publications.  Unlike a typical Internet publication, the information at issue in Swafford was not available for the general public to access, nor could any unregistered and non-specific entities access the registered databank.  Given the exclusive and controlled access to the NPDB "pay-to-play" databank, the release of the offending information could hardly be considered an "aggregate communication" comparable to typical Internet publication, where access is generally available to anyone at any time.  Indeed, the limited access scenario set forth in Swafford resembles Oja's telephone call analogy where the agency releases the information anew each time there is a request.  Swafford is much more akin to the release of personal credit reports by those agencies that track and compile credit information; in such cases, it has been widely accepted that the transmission or publication of the information does not warrant application of the single publication rule, and each transmission or publication is actionable.

22 Id. at 1133; see also Canatella, 486 F.3d at 1136 (also distinguishing Swafford because the

23 plaintiff's information was widely available to the general public on the webpage, even if

24 the public had to perform a search on his name to find it).

25         The Court concludes that in addition to adopting the single publication rule,

26 Nevada also would follow Oja, Swafford, and the Restatement's comment regarding the

9

difference between general internet publishing and a second publication of the same information to a new audience.  A report to the NPDB database is not the same as a single edition of a newspaper.  It can be accessed only by a select group of individuals and only upon their request.  It is not widely and generally available and thus is not a single, aggregate publication.  Each time the information is released to a requester, it is published anew.

Defendants have a nonfrivolous argument that Williams can trigger future publications by applying to hospitals who then would request the NPDB report, and thereby increase damages and re-trigger the limitations period.  But Defendants can remove the posting or modify it at any time, and thus can control whether the information is published to future requesters.  Defendants thus can avoid the concerns of increased liability and continuous resetting of the statute of limitations that underlie the single publication rule.  Additionally, once the issue of whether the NPDB report is defamatory is resolved, either Defendants may remove or modify the report if it is found to be defamatory, or Williams will not be able to bring future claims based on the report due to issue preclusion if it is found not to be defamatory.  Moreover, this same argument could apply in the credit report situation, where a plaintiff could trigger requests for his credit history by taking actions which would induce third parties to request his credit history.  However, courts have not applied the single publication rule to that analogous situation.

Williams has presented evidence that the NPDB report has been accessed within the last two years.  Consequently, Williams' defamation claims are timely for any requests made for the NPDB report within two years of the filing of the Complaint.

In sum, the Court will grant Defendants' motion for summary judgment based on the statute of limitations as to count 10 (negligence), and counts 11 (defamation), 12 (defamation per se), and 13 (libel) for any defamatory publications prior to two years before the filing of the Complaint.  The Court will deny Defendants' motion as to count 1 (due

process) and counts 11 (defamation), 12 (defamation per se), and 13 (libel) for any defamatory publications within two years of the filing of the Complaint.

## II. PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER STRIKING CERTAIN CLAIMS AGAINST CERTAIN DEFENDANTS (Doc. #102)

Williams seeks reconsideration of the Court's prior Order (Doc. #90) granting summary judgment in favor of Defendants UMC and the Board on count one, and the Board for counts eleven, twelve, and thirteen. Williams further requests the Court grant summary judgment in favor of Williams on his due process claim against UMC and the Board. Williams argues the Court's prior Order was based on a lack of evidence that the Board and UMC participated in the due process violations. Williams contends he now has evidence he raised the due process violations to the Board, and thus he has established the Board's participation in the constitutional violation. Williams contends the Court thus not only should reconsider its prior ruling, it should enter partial summary judgment in favor of Williams on count one against the Board and UMC. Williams also argues he has evidence the Anesthesia Committee declined to take action against Williams and was going to conduct further investigation on the same day the NPDB report was sent to the data bank. Williams requests the Court reconsider the grant of summary judgment as to the Board on the defamation claims.

Defendants respond that Williams has not presented new evidence because it was within Williams' knowledge as to whether he presented his due process arguments to the Board. Williams thus could and should have presented that evidence and argument previously.

### A. Count One

The Court will not reconsider its prior Order on count one as to UMC and the Board. Williams contends Defendants have not provided him with all documents in discovery, and he only recently received from Defendants the background statement he

11

presented to the Board prior to the Board's final decision which shows he raised the due process violations to the Board.  Even assuming Defendants failed to turn over the document upon which Williams now relies, this information was within Williams' knowledge.  Williams would know whether he presented certain arguments to the Board, and he could have filed an affidavit in support of his arguments.  Williams could and should have presented this evidence in response to Defendants' summary judgment motion, but failed to do so.  The Court therefore will deny Williams' motion to reconsider the Court's prior Order as to count one.

### B.  Defamation Counts

Williams also seeks reconsideration of the grant of summary judgment as to the Board in relation to the defamation counts.  Williams contends he has new evidence in the form of minutes from the meeting of the Anesthesia Committee which show the Committee wanted to conduct further investigation into the issues surrounding Williams' suspension.  That same day, the NPDB report was filed even though the Committee had not completed an investigation or recommended any action.  Williams does not explain how the Anesthesia Committee meeting minutes overcome the Court's prior ruling that Williams failed to present evidence of personal participation by the Board or that the Board acted with actual malice.  The Court will deny the motion to reconsider with respect to the defamation counts.

### III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #105)

Williams argues that based on the Court's prior Orders, he now is entitled to summary judgment on his claims for negligence per se (count 10), breach of the covenant of good faith and fair dealing (count 9), and defamation claims (counts 11, 12, 13).  Defendants respond that issues of fact remain as to each claim.

///

///

### A. Negligence Per Se (Count 10)

Williams argues Defendants' violation of the Bylaws satisfies the duty and breach elements of negligence, and no genuine issue of material fact remains that Defendants' failure to comply with the Bylaws caused him damages. Defendants respond that genuine issues of material fact remain as to breach and causation.

Because this claim is barred by the statute of limitations, as discussed above, the Court will deny Williams' motion for summary judgment on this claim. Even if this claim were not barred, genuine issues of material fact remain as to causation. Williams contends that if he had been provided proper notice and given all documents as required, he would have been able to defend himself better. He notes that when he was able to fully defend himself by the state medical board, that body took no action against him. However, that he did not have his license to practice medicine revoked does not necessarily mean that Defendants still might not have made the same substantive decisions about his privileges at UMC if they had followed the Bylaws' procedural requirements. Whether the result would have been different is a jury question. The Court will deny Williams' motion for summary judgment on this claim.

### B. Breach of the Covenant of Good Faith and Fair Dealing (Count 9)

Williams argues he entered into an enforceable contract with Defendants and Defendants breached the implied covenant of good faith and fair dealing by filing the NPDB report and failing to provide evidence to support it, failing to amend the NPDB report after Williams identified a problem with it, using "word on the street" evidence relating to alleged drug use, considering drug abuse and wastage even though later denying it was a factor in any decisions, delaying the fair hearing, disrupting Williams' presentation of evidence at the fair hearing, moving forward despite the Anesthesia Committee's incomplete investigation, faxing new evidence to Williams the day of the fair hearing, raising allegations relating to Williams' privileges application at the hearing, delaying

notice of the fair hearing date, and withholding documents as privileged when they were not.

Defendants respond that the Court already ruled in its decision on Defendants' prior summary judgment motion that genuine issues of fact remain as to whether Williams and Defendants entered into a contract. Defendants also argue the alleged conduct Williams sets forth do not arise to a breach of the covenant, and in any event, there are issues of fact as to the alleged conduct.

Under Nevada law, whether an enforceable contract was formed is a question of fact. Whitemaine v. Aniskovich, 183 P.3d 137, 141 (Nev. 2008). Consequently, the Court previously ruled on Defendants' motion for summary judgment that a fact issue remained as to whether the parties formed a contract through the grant of privileges which incorporated the Bylaws. Further, issues of fact remain as to whether Defendants breached the implied covenant of good faith and fair dealing. Whether a party acted in good faith is a fact question. Mitchell v. Bailey & Selover, Inc., 605 P.2d 1138, 1139 (Nev. 1980). Viewing the facts in the light most favorable to Defendants, a reasonable jury could conclude the acts to which Williams refers do not amount to a breach of the covenant of good faith and fair dealing. Moreover, Defendants dispute Williams' characterizations of the alleged conduct. The Court will deny Williams' motion on this claim.

**C. Defamation (Counts 11-13)**

Williams moves for summary judgment on his defamation claims, arguing no genuine issue of fact remains that the NPDB report was false, made with malice, and caused him damages. Defendants respond that issues of fact remain as to falsity and malice.

The Court will deny Williams' motion. Under Nevada law, it is a question for the Court as to whether a statement is capable of a defamatory construction. Posadas v. City of Reno, 851 P.2d 438, 442 (Nev. 1993). However, if a statement is "capable of different constructions, one of which is defamatory, resolution of the ambiguity is a

question of fact for the jury." Id.  The NPDB report is ambiguous and the Court already determined it is capable of a defamatory construction.  Resolution of whether it is in fact defamatory is now a jury question.

Moreover, factual questions remain as to whether Defendants acted with actual malice.  Actual malice is a subjective inquiry into the defendant's belief regarding the statement's truthfulness.  Nev. Indep. Broad. Corp. v. Allen, 664 P.3d 337, 344 (Nev. 1983).  While Williams has presented evidence raising an issue of fact on actual malice sufficient to defeat Defendants' prior motion for summary judgment, viewing the facts in the light most favorable to Defendants, a reasonable jury could find in Defendants' favor. The Court therefore will deny Williams' motion for summary judgment on the defamation claims.

## IV.  CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment on Claims One, Ten, Eleven, Twelve, and Thirteen (Doc. #96) is hereby GRANTED in part and DENIED in part.  The motion is granted as to Plaintiff's negligence claim in count ten, and as to Plaintiff's defamation claims in counts eleven, twelve, and thirteen for any publications occurring more than two years prior to the filing of the Complaint.  The motion is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiff's Motion for Reconsideration of Order Striking Certain Claims Against Certain Defendants (Doc. #102) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. #105) is hereby DENIED.

///
///
///
///

IT IS FURTHER ORDERED that the parties shall file the proposed joint pretrial order within thirty (30) days of the date of this Order.

DATED: July 28, 2010

_____
PHILIP M. PRO
United States District Judge